UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JEFF MULLINS d/b/a MULLINS )
AMMUNITION, INC., )
 )
    Plaintiff, )
 ) NO. 07 C 50245
    vs. )
 )
RINKY DINK SYSTEMS, INC. d/b/a )
RD SYSTEMS, INC. )
 )
    Defendant. )

ANSWER AND AFFIRMATIVE DEFENSES OF RINKY DINK
SYSTEMS, INC. n/k/a J & J RIBORDY, INC. TO COMPLAINT

Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J

RIBORDY, INC., by its attorneys, HOLMSTROM & KENNEDY, P.C., files its Answer

and Affirmative Defenses to the Complaint filed in this cause and states as follows:

1.    Plaintiff is a resident and citizen of the Town of Clintwood, County of

Dickenson, Commonwealth of Virginia and is the President and Registered Agent for

Mullins Ammunition, Inc., which said corporation is located in the Town of Clintwood,

County of Dickenson, Commonwealth of Virginia.

**ANSWER:**

Defendant is without sufficient knowledge or information sufficient to form a belief

as to the truth of the allegations of Paragraph 1 of the Complaint.

2.    Defendant is a corporation organized under the laws of the State of Illinois, having an office and principal business at 14328 Commercial Parkway, South Beloit, IL 61080.

**ANSWER:**

Defendant admits the allegations of Paragraph 2 of the Complaint except that Defendant denies that its office and place of business is 14328 Commercial Parkway, South Beloit, Illinois 61080.  Defendant's current registered office is 7204 Buss Road, Clinton, Wisconsin 53525.

3.    The amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**ANSWER:**

Defendant admits that Plaintiff demands a sum in excess of the jurisdictional minimum required for diversity jurisdiction.

4.    In or about February, 2002, Plaintiff appeared at a Shot Show in Las Vegas, representing his corporation, Mullins Ammunition, Inc.  Defendant was a vender (sic) at said show.  Plaintiff was approached by Defendant with an inquiry of his interest in purchasing a High Production Bulllet Machine for his business.

**ANSWER:**

Defendant denies the allegations of Paragraph 4 of the Complaint.

5.    Defendant quoted to Plaintiff a price of Three Hundred Eleven Thousand Dollars ($311,000.00) for building a swagging (sic) and scarring machine (hereinafter referred to as "the machine").  Plaintiff was informed that delivery could be expected within nine (9) months after a purchase order was signed.

**ANSWER:**

Defendant admits that, in response to an inquiry by Plaintiff on May 13, 2002, Defendant prepared and mailed a Quote No. 1720B-02 for a swaging and scarring machine for a price of $311,000.00, which written Quote is attached hereto as Exhibit 1 and is made a part of this Answer.  Defendant denies the remaining allegations of Paragraph 5.

6.    Defendant informed Plaintiff that Defendant would not be responsible for the dies used in the machine; therefore, Plaintiff contracted with Bronson and Bratton (hereinafter referred to as "B & B") to build the dies.

**ANSWER:**

Defendant admits that it was not responsible for the dies to be used in the machine and admits that Plaintiff contracted with Bronson and Bratton to build the dies.

7.    Plaintiff, Defendant and B & B met at Defendant's production plant and discussed what was necessary to complete the machine.  A first payment was made to Defendant, as agreed, and work began on the machine.

3

**ANSWER:**

Defendant denies the allegations of Paragraph 7 of the Complaint except that Defendant admits that the down payment required under the terms of the Contract was made to Defendant by Plaintiff and work began on the machine.

8.    As months passed, progress reports from the Defendant became few and far between.  When Plaintiff contacted Defendant to inquire as to how production was proceeding, Defendant indicated that the dies sent from B & B were incorrect and would not work in the machine.  Plaintiff contacted B & B and was told that the dies sent to Defendant were within the specifications given during the initial meeting.

**ANSWER:**

Defendant denies the allegations of Paragraph 8 of the Complaint except that Defendant admits that from time to time the dies sent from B & B were unsatisfactory to Defendant or to Plaintiff and that weeks would pass before Defendant received a response from Plaintiff or B & B on the tooling.  Defendant is without sufficient knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8.

9.    Plaintiff, along with representatives of B & B, went to Plaintiff's production plant to determine how production was progressing on the machine.  At the time of Plaintiff's visit, Defendant could not make the machine run without breaking down repeatedly.  Plaintiff informed the representatives from B & B to make any changes to the dies that Defendant requested.

4

**ANSWER:**

Defendant denies the allegations of Paragraph 9 of the Complaint except that Plaintiff admits that Plaintiff, representatives of B&B and representatives of Defendant had meetings during 2003 and 2004 at Defendant's plant regarding the tooling.

10.    A few more months passed and Plaintiff received a phone call from an unnamed employee of Defendant indicting (sic) that the machine was over budget and production would be stopped unless Plaintiff called to question what was happening with the machine's production.

**ANSWER:**

Defendant is without sufficient knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint.

11.    Plaintiff attempted to contact Joe Raphody, an employee of Defendant, numerous time, to discuss the machine's status.  When Mr. Raphody finally took Plaintiff's call she indicated that B & B was the cause of the problems with the production of the machine and after further discussion, Mr. Raphody blamed Plaintiff as the cause of the problems with the production of the machine. (sic)

**ANSWER:**

Defendant denies the allegations of Paragraph 11 of the Complaint except that Defendant admits that it advised Plaintiff that the machine's production was delayed by Plaintiff's unresponsive behavior related to the issues with the dies produced by B & B.

5

12.    Plaintiff was contacted by Gary Steves, a representative of B & B, who advised of the company's concern regarding a bill for the dies requested by Defendant and the damage done to the dies when Defendant was attempting to run the machine. A conference call was held between Plaintiff, Defendant and B & B. Plaintiff assumed that all concerns had been covered during the phone conference and were no longer an issue.

**ANSWER:**

Defendant is without sufficient knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.


13.    Not long after the afore-said (sic) phone conference, Defendant sent some bullets to Plaintiff for his inspection and approval. Plaintiff inspected said bullets and contacted Defendant with suggestions. Many months passed before more bullets were sent for inspection.

**ANSWER:**

Defendant admits that from time to time it sent bullets to Plaintiff for his inspection and approval. Defendant denies the remaining allegations of Paragraph 13.


14.    Early 2006, Plaintiff was informed by Mr. Raphody that the machine was ready to run; therefore, Plaintiff made a trip to Defendant's production plant for a test run of the machine. The machine was inoperable and Plaintiff, along with staff from Mullins Ammunition, attempted to determine the cause of the malfunction of the machine.

6

**ANSWER:**

Defendant admits that in May and June 2006 Plaintiff visited Defendant's production plant and in further answering states that Plaintiff made a test run of the machine, produced one million bullets and that Plaintiff left with this supply of bullets from the machine but denies the remaining allegations of Paragraph 14. Further answering, Defendant advised Plaintiff that such production run would constitute the pre-shipment demonstration at Defendant's plant and would trigger payment by Plaintiff of the contract sum of $86,000.00 and other outstanding invoices.

15.    Plaintiff had accepted a contract for a major client for a one million round order based upon Defendant's assurances that the machine would be operational and running on a 330 pieces per minute speed.

**ANSWER:**

Defendant is without sufficient knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the Complaint except that Defendant denies that Defendant made any assurances beyond the terms of the written contract between the parties.

16.    The machine would only run at a 35 pieces per minute speed, and would only run for a limited amount of time before breaking down.

**ANSWER:**

Defendant denies the allegations of Paragraph 16 of the Complaint.

7

17.    Due to the Defendant's inability to complete the machine, Plaintiff had to make other arrangements to complete the U.S. Armed Forces order, causing additional expense for Plaintiff.

**ANSWER:**

Defendant is without sufficient knowledge or information sufficient to form a belief as to the allegation that Plaintiff received a U.S. Armed Forces order or that he made other arrangements to complete the U.S. Armed Forces order, but denies that any such other arrangements made were caused by Defendant's inability to complete the machine.

18.    Plaintiff on his part duly performed all the terms and conditions of said agreement by him to be performed.

**ANSWER:**

Defendant denies the allegations of Paragraph 18 of the Complaint in that Plaintiff failed to provide the necessary tooling for the machine and failed to make timely payments required by the written contract between the parties.

19.    Defendant has not performed said agreement in that the machine has not been delivered in the specified amount of time and is still not operating correctly after additional time was allowed to complete said machine; specifically, four additional years were allowed for completion.

**ANSWER:**

Defendant denies the allegations of Paragraph 19 of the Complaint.

20.    By reason of such breach, Plaintiff has sustained damages in the sum of $5,000,000.00.

**ANSWER:**

Defendant denies the allegations of Paragraph 20 of the Complaint.

WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that the Complaint be dismissed and for such other relief as this Court shall deem just.

AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

Limitation of Liability

For its First Affirmative Defense, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. states as follows:

1.    The written agreement between the parties relating to the machine is attached hereto as Exhibit 1 and provides as follows:

Limitation of Liability.    RD Systems, Inc, will not be liable for any consequential damages claimed in relation to the purchase or warranty of the equipment to be delivered hereunder.    RD Systems, Inc. will not be liable for any injury to persons or property caused directly or indirectly by the use of the equipment delivered hereunder.

2.    Consequential damages have thereby been waived by Plaintiff pursuant to the terms of the Contract and cannot be sought by Plaintiff in this action.

WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that the Complaint be dismissed and for such other relief as this Court shall deem just.

## SECOND AFFIRMATIVE DEFENSE

### Exclusion of Warranty

For its Second Affirmative Defense to the Complaint, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. states as follows:

1.    The written agreement between the parties relating to the machine is attached hereto as Exhibit 1 and provides as follows:

> Warranty.   RD Systems, Inc., warrants to the original Buyer that the equipment to be delivered hereunder shall be free from defects in materials and workmanship under normal and proper usage for a period of six (6) months after shipment from our facility.  Parts requested by the Buyer, but not manufacture by RD Systems, Inc., such as cutting tools, dies and expendable tooling, are not covered by this warranty. Commercial components used as part of the equipment are warranted to the same extent as the manufacturer's warranty.  The warranty provisions contained herein are expressly in lieu of all other warranties, express or implied.  **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE MADE IN CONNECTION WITH THE EQUIPMENT TO BE DELIVERED HEREUNDER.**  Buyer's sole and exclusive remedy hereunder is limited to the repair or replacement, at the option of RD Systems, Inc., F.O.B. South Beloit, IL, of any parts that are found by RD Systems, Inc., to disclose defects.   All warranty claims must be made in writing promptly after discovery of the claimed defect within the warranty period.

2.    No warranty beyond that provided in the written agreement between the parties exists relating to the production of this machine, and no claim for breach of any warranty, express or implied, beyond the terms of this agreement can be sought by Plaintiff in this action.

WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that the Complaint be dismissed and for such other relief as this Court shall deem just.

RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC.

BY:    HOLMSTROM & KENNEDY, P.C.


BY:    _____
       One of its attorneys

KIM M. CASEY - #6181726
Holmstrom & Kennedy, P.C.
800 N. Church St.
P.O. Box 589
Rockford, IL 61105
(815) 962-7071

<u>PROOF OF SERVICE</u>

The undersigned states that a copy of the foregoing **Answer and Affirmative Defenses of Rinky Dink Systems, Inc. to Complaint** was served upon:

> Robert Fredrickson
> 2902 McFarland Rd.
> Suite 400
> Rockford, IL 61107

the parties and attorneys of record herein, via the Court's CM/ECF system by electronic transmission and by depositing said envelope, with postage fully prepaid by first class mail, in the United States Post Office mailbox in Rockford, Illinois, on this 7th day of _March_, 2008.

_____
Joyce Howe

Subscribed and sworn to before me
this 7th day of March, 2008

Katherine Collopy-Norris

```
"OFFICIAL SEAL"
KATHERINE COLLOPY-NORRIS
Notary Public, State of Illinois
My Commission Expires 11/02/11
```

OCT-11-2007  11:44                                                    815 624 8198    P.02/05



**14328 Commercial Parkway    South Beloit, IL 61080**
Ω

May 13, 2002

Mr. Jeff Mullins                                    Quote 1720B-02
Mullins Ammunition                                 Swaging & Scarring
Rt. 2, Box 304-K
Clintwood, VA  24228
Pho: 276-926-6772
Fax: 540-926-6092

Dear Mr. Mullins:

We are pleased to quote your requirements for one bullet swaging and scarring machine.  The basic swaging machine will be mechanically linked together with the only differences being in the tooling of each of the three rotary stations.

The tooling will be designed in such a manner that all adjustments are in the tools themselves, and will be labeled for a particular tool location on the turret.  In this manner, when changing from one caliber to the other, the tools will be able to be placed back in and, in theory, no adjustments would need to be made since the last time the tooling was used.  The tooling is is not included in the price of the machine.

Per our discussions, there will be two feeding modules.  One module will be for the pistol bullets.  The other module will be for the rifle bullets.  The rifle puck will be higher than the pistol puck so that after they come out of the machine they can be separated and fed back into their load stations.  Pucks for 5 sizes, 2 rifle and 3 pistol, are included in the price of the machine.

After the core and jacket have been placed together, and in the puck they would run to the swaging/scarring machine.  There will be two infeed wheels, each set up to accept half of the production.  The basic swaging machine is equipped with ten tool locations.  As your production grows, the additional tools can be placed into the machine for the next level of increased production.  All of the tools will be in the machine so that they can be removed without any hand tools, but if height adjustments are required, tools will be utilized.

<u>Electrical</u>
Power sources 480/220 Volts, 3 phase, 60 hertz. Transformer to furnish 120 volts for control circuits. 24 volt DC power supply to provide power for programmable controller circuits.

---

ΩRD Systems      TEL: (815) 624-7797,
                 E-MAIL: rd systems@easymation.com         FAX: (815) 624-8198
                                                           WEB PAGE: www.easymation.com
                                                1

**EXHIBIT**

tabbies

1

OCT-11-2007  11:45    815 624 8198    P.03/05



A central control system for sequence logic will be provided mounted in a NEMA 12 cabinet. A Programmable Controller will perform central control. Operator interface will be handled with a Message Center, and, or indicator lights. Any special configurations will be quoted as an option.

The electrical and electronic hardware necessary for the machine to cycle in automatic or manual mode is included in this proposal.

## Output

The system, capable of running up to 600 ppm, at the time will be limited by the feeder systems on the load modules. The feed systems have been quoted at 300 parts per minute. Rejects caused by machine operation will be no greater than 3%.

The actual production rate will be greater than 85% over extended periods of time. All of the above is based on machine controllable problems such as feeding, placing, closing, etc. Problems associated with out of tolerance parts or operator delays must be excluded.

## Guarding

RD Systems will provide proper guarding as we interpret OSHA requirements to insure operator safety.

## Drawings

RD Systems will provide blue prints of assembly drawings and reproducible drawings of fast wearing/tooling parts, electrical circuit diagrams, and technical data. AutoCAD drawing format will be provided only for fast wearing/tooling parts, and electrical drawings. Machine or station layouts will be provided only in a blueprint format.

Possession of these drawings does not convey transfer of title and RD Systems does not allow use of these drawings for any purpose not directly related to the equipment supplied under this contract and insists that the customer maintain these drawings as confidential property.

## Manuals and Spare Parts List

General maintenance advice will be provided as well as copies of all vendor-supplied manuals. Because of the specialized nature of this equipment detailed maintenance procedures are typically developed during the first 6 months of operation in the user facility. Thus RD Systems considers that detailed maintenance procedures are the responsibility of the customer to prepare in his preferred format.

A spare parts list will be available at the time of design approval. Spare parts are not included in the quoted price.

## PLC (programmable controller) documentation shall consist of standard ladder logic format. All other types of documentation (state logic, flow charts, etc.) will be billed at cost.

2

## Warranty

RD Systems warrants this equipment against defects in parts, material, and workmanship for a period of six months. This warranty is subject to RD inspection of parts to eliminate possible misuse as the cause for the failure. RD Systems extends the manufacturer's guarantee on parts not manufactured by RD Systems. The warranty period (6 mos.) begins from date of shipment from our facility. Any defects detected between the time of shipment and final acceptance will be corrected by RD Systems. After Final Acceptance no additional warranty work will be performed prior to receipt of the final payment as stated under Payment Terms.

## Field Service

RD Systems will provide a field service engineer for on-site assistance during start-up at your facility. Travel, labor, meals, and lodging for this support will be the responsibility of the customer.

## Delivery

The above-described equipment can be shipped within 6-7 months after receipt of a purchase order and required down payment.

All shipment dates are based on a best estimate given at the time of the Quote. It is the intention of RD Systems to deliver all jobs on time. Changes in scheduling conditions present at the time of quotation may change. In the event of such changes we will present a new delivery date as soon as a discrepancy with the original delivery date occurs.

## Price

The equipment as described above will be FOB South Beloit, IL:

Basic machine not including tooling, designed for 5 sizes.
One rifle jacket and core station.
One pistol jacket and core station.
3 swaging and scarring turrets

      Price ...................................... $311,000.00

## Acceptance

This equipment will have three key project review acceptance dates.

### Design:

Upon completion of the preliminary layout drawings, the design concept will be reviewed in depth with you at our South Beloit, Illinois facility.

### Pre-Shipment Demonstration:

Prior to shipment RD Systems will demonstrate this equipment for a period of not less than 4 hours on our assembly floor in South Beloit, Illinois.

OCT-11-2007  11:45                                                    815 624 8198      P.05/05

**Final Acceptance:**

Final acceptance will occur at the customer's facility. Final acceptance will be accomplished by either of the following occurring:

1.    Demonstration of continuous operation for a period of 8 hours.
2.    Customer begins production of product produced with equipment.

## Shipping

The above price does not include costs for applicable taxes, crating, packing, transportation, or transportation insurance that may be desired. These costs will be invoiced at the time of shipment and will be net 10 days.

## Validity

This quotation is valid for a period of 30 days. After that time RD Systems reserves the right to re-quote this system.

## Payment Terms

$10,000 Down
$75,000 Engineering Complete
$86,000 Acceptance at RD Systems
$29,000 Run-Off at Mullins

RD Systems will finance the outstanding balance for up to 24 months after shipment to Mullins from RD Systems. Payment to RD Systems will be made at 1/2 penny per bullet manufactured by Mullins on the machine.

Mullins has the option to pay off the balance at any time. The balance will be financed at the prime lending rate. Payments will be made to RD Systems monthly. RD Systems will retain ownership of the equipment until it has been paid in full.

## Delays or Cancellation

If during the design, construction, or acceptance testing of this equipment a delay is caused by customer personnel changes or lack of needed customer supplied parts, or a cancellation of the project, RD Systems reserves the right to collect all costs plus a markup of 10% at that time. The amount due will not exceed the total contract price.

If you have any questions regarding this quote, please feel free to call me.

Sincerely,


Jo Ribordy
RD Systems

Quote 1720B-02
JR/sh

4

TOTAL P.05



# STANDARD TERMS & CONDITIONS

The following terms and conditions together with the enclosed proposal comprise our entire quotation. Any terms or conditions of the Buyer's order which are in any way in conflict with, inconsistent with, or in addition to the terms and conditions herein, shall not be binding on the Seller, unless expressly agreed to in writing. The Seller's plant in South Beloit, IL, shall be the place of performance where the title passes to the Buyer, and payments become due. This agreement shall be an Illinois contract, and shall be interpreted and administered for all purposes under the laws of Illinois.

### Delivery Schedule

Delivery dates are estimated based on information available at the time of quotation. Every effort will be made to keep or exceed the estimated date of shipment. Shipping dates are based on the timely receipt of the customer's purchase order and binder, in addition to all necessary prints, sample parts, and specifications required by the Seller. RD Systems will not be responsible for delays caused by the customer for any reason, including changes, design approval, or lack of sample parts. Also, any delays caused by strikes, accidents, acts of God, war, fires, and delay in receipt of parts or materials from suppliers or subcontractors, embargoes, or any other circumstances beyond the Seller's control.

### Cancellation

Orders cancelled by the customer at any time prior to delivery are subject to accrued charges for engineering, labor, material and handling plus a 10% mark up. The amount due will not exceed the total value of the contract.

### Limitation of Liability

RD Systems, Inc., will not be liable for any consequential damages claimed in relation to the purchase or warranty of the equipment to be delivered hereunder. RD Systems, Inc., will not be liable for any injury to persons or property caused directly or indirectly by the use of the equipment delivered hereunder.

### Production Rates

Production rates quoted represent our best estimate based upon available knowledge and information received at the time of quotation. Actual productivity is dependent upon parts being within tolerance, clean and free of foreign objects. Occasionally, it may be necessary for the customer to take action to improve quality control in order to maximize machine efficiency.

### Warranty

RD Systems, Inc., warrants to the original Buyer that the equipment to be delivered hereunder shall be free from defects in materials and workmanship under normal and proper usage for a period of six (6) months after shipment from our facility. Parts requested by the Buyer, but not manufacture by RD Systems, Inc., such as cutting tools, dies and expendable tooling, are not covered by this warranty. Commercial components used as part of the equipment are warranted to the same extent as the manufacturer's warranty. The warranty provisions contained herein are expressly in lieu of all other warranties, express of implied. **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE MADE IN CONNECTION WITH THE EQUIPMENT TO BE DELIVERED HEREUNDER.** Buyer's sole and exclusive remedy hereunder is limited to the repair or replacement, at the option of RD Systems, Inc., F.O.B. South Beloit, IL, of any parts that are found by RD Systems, Inc., to disclose defects. All warranty claims must be made in writing promptly after discovery of the claimed defect within the warranty period.

### Inspection

Equipment is accepted by inspection and acceptance at our plant in South Beloit, IL. Upon completion of the order. RD Systems will notify the Buyer that the equipment is ready for inspection. Within thirty (30) days thereafter, the Buyer shall inspect, examine, and test the equipment. After the equipment has been approved by the Buyer and released for shipment from the premises of RD Systems Inc., further claims, if any, are limited to those covered by our standard warranty.

### Service

Service is provided for initial set up at the customer's plant as stated in quotation. If additional service is requested at the customer's plant, it will be provided at our normal hourly rate basis, plus transportation and living expenses. RD Systems strongly encourages the Buyer to send technicians for indoctrination training at our plant for a specified period of time, prior to shipment.

### Credit Terms

Standard credit terms are extended based upon evaluation and approval of your account by RD Systems. A finance charge of 1 ½% per month (which is an annual rate of 18%) will be charged on amounts past due 10 days, plus attorney fees and expenses incurred by the company if such account is placed in the hands of an attorney for collection.