UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JEFF MULLINS d/b/a MULLINS )
AMMUNITION, INC., )
) No. 07 C 50245
                            Plaintiff, )
)
vs. )
)
RINKY DINK SYSTEMS, INC. d/b/a RD )
SYSTEMS, INC., n/k/a J&J RIBORDY, INC., )
)
                           Defendant. )

## AMENDED COMPLAINT

NOW COMES the Plaintiff, JEFF MULLINS d/b/a MULLINS AMMUNITION, INC., and for his Amended Complaint against RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J&J RIBORDY, INC., states and alleges as follows:

### COUNT I

1.    That Plaintiff is a resident and citizen of the Town of Clintwood, County of Dickenson, Commonwealth of Virginia and is the President and Registered Agent for Mullins Ammunition, Inc. Said corporation is located in the Town of Clintwood, County of Dickenson, Commonwealth of Virginia.

2.    That Defendant, RINKY DINK SYSTEMS, INC. d/b/a RD SYSTEMS, INC. n/k/a J&J RIBORDY, INC. is a corporation organized under the laws of the state of Illinois, having an office and principal place of business at 14328 Commercial Parkway, South Beloit, IL 61080.

3. That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

4. That on or about February, 2002, Plaintiff appeared as a vendor at a Shot Show in Las Vegas, representing his corporation, Mullins Ammunition, Inc. At said show, Plaintiff was approached by Defendant with an inquiry of his interest in purchasing a High Production Bullet Machine for his business.

5. That Defendant quoted to Plaintiff a price of Three Hundred Eleven Thousand Dollars ($311,000.00) for building a swagging and scarring machine (hereinafter referred to as "the machine") having a ten die dial which could run one hundred rounds per minute per die (1,000 rpm for 10 dies) with an overall 80-85% efficiency. Plaintiff was informed that delivery could be expected within nine (9) months after a purchase order was signed (see Quote No. 1720B-02 attached to Defendant's Answer).

6. That Defendant informed Plaintiff that Defendant would not be responsible for the dies used in the machine; therefore, Plaintiff contracted with Bronson and Bratton (hereinafter referred to as "B & B") to build the dies.

7. That Plaintiff, Defendant and B & B met at Defendant's production plant and discussed what was necessary to complete the machine. A first payment was made to Defendant, as agreed, and work began on the machine.

8. That as months passed, progress reports from the Defendant became few and far between. When Plaintiff contacted Defendant to inquire as to how production was proceeding, Defendant stated that the dies sent from B & B were incorrect and would not work in the machine. Plaintiff contacted B & B and was told that the dies sent to Defendant

were within the specifications given during the initial meeting.

9. That Plaintiff, along with representatives of B & B, went to Plaintiff's production plant to determine how production was progressing on the machine. At the time of Plaintiff's visit, Defendant could not make the machine run without breaking down repeatedly. Plaintiff informed the representatives from B & B to make any changes to the dies that Defendant requested.

10. That after more months passed and Plaintiff received a phone call from an unnamed employee of Defendant that the machine was over budget and production would be stopped unless Plaintiff called to question what was happening with the machine's production.

11. That Plaintiff attempted to contact Jo Ribordy, an employee of Defendant, numerous time, to discuss the machine's status. When Ribordy finally took Plaintiff's call, she stated that B & B was the cause of the problems with the production of the machine and after further discussion, Jo Ribordy blamed Plaintiff as a cause of the problems with the production of the machine.

12. That Plaintiff was contacted by Gary Steves, a representative of B & B, who advised of B & B's concern regarding the cost for the dies requested by Defendant and the damage done to the dies when Defendant attempted to run the machine. A conference call was held between Plaintiff, Defendant and B & B, after which Plaintiff assumed that all concerns had been covered and were no longer issues.

13. That not long after the aforesaid phone conference, Defendant sent some bullets to Plaintiff for his inspection and approval. Plaintiff inspected said bullets and

contacted Defendant with suggestions. Many months passed before more bullets were sent for inspection.

14. That early 2006, Plaintiff was informed by Jo Ribordy that the machine was ready. Therefore, Plaintiff made a trip to Defendant's production plant for a test run of the machine. The machine was inoperable and Plaintiff, along with staff from Mullins Ammunition, attempted to determine the cause of the malfunction with the machine.

15. That Plaintiff had priced and accepted a contract from a major client (UAE) one million round order based upon Defendant's assurances that the machine would be operational and running as promised and represented by Defendant.

16. That factoring in the breakdowns, the machine averaged 8-15 rounds per minute with three dies in the ten die dial.

17. That Plaintiff has duly performed all the terms and conditions required of Plaintiff by said agreement.

18. That Defendant has breached said agreement because the machine has not been delivered within the specified time and is still not operating correctly after additional time (four years) was allowed to complete said machine.

19. That by reason of the breach of contract, Plaintiff has suffered damages as the costs spent on the dies and the machine, for the labor costs trying to de-bug the machine, the increased labor cost on the UAE contract, and the lost profit on the contracts to Saudi Arabia, all of said damages estimated at $5 million.

WHEREFORE, Plaintiff prays judgment against the Defendant, Rinky Dink Systems, d/b/a R.D. Systems n/k/a J&J Ribordy, Inc. in the amount of Two Million ($2,000,000)

Dollars, for costs, and for such other relief as this Court deems proper.

## COUNT II

1.   That Plaintiff is a resident and citizen of the Town of Clintwood, County of Dickenson, Commonwealth of Virginia and is the President and Registered Agent for Mullins Ammunition, Inc. Said corporation is located in the Town of Clintwood, County of Dickenson, Commonwealth of Virginia.

2.   That Defendant, RINKY DINK SYSTEMS, INC. d/b/a RD SYSTEMS, INC. n/k/a J&J RIBORDY, INC. is a corporation organized under the laws of the state of Illinois, having an office and principal place of business at 14328 Commercial Parkway, South Beloit, IL 61080.

3.   That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

4.   That on or about February, 2002, Plaintiff appeared at a Shot Show in Las Vegas, representing his corporation, Mullins Ammunition, Inc. Defendant was a vender at said show. Plaintiff was approached by Defendant with an inquiry of his interest in purchasing a High Production Bullet Machine for his business.

5.   That Defendant quoted to Plaintiff a price of Three Hundred Eleven Thousand Dollars ($311,000.00) for building a swagging and scarring machine (hereinafter referred to as "the machine"). Plaintiff was informed that delivery could be expected within nine (9) months after a purchase order was signed (see Quote No. 1720B-02 attached to Defendant's Answer).

6. That early on in the production of said machine, the defendant knew that it had not built the machine to proper specifications and further knew from an early test run that the machine could not and would not be able to reach the production levels represented, and knowing said deficiencies proceeded with the following misrepresentations:

    (a) That it was not the machine's fault that dies made by B & B were being damaged;

    (b) That the Plaintiff should continue to pay as agreed as the machine was going through production as planned;

    (c) That the remade dies from B & B were incorrectly made and did not meet specifications and therefore were the cause of further problems;

    (d) That when the machine did not operate properly, that it was not Defendant's fault, and Defendant would be able to correct the deficiencies;

    (e) That the machine was over budget and thereby would be stopped unless Plaintiff paid more and rectified the problem allegedly caused by the B & B dies, and that Defendant would be able to provide a production machine as agreed;

    (f) That the machine in early 2006 was ready to run.

7. That Plaintiff had priced and accepted a contract from a major client (UAE) one million round order based upon Defendant's assurances that the machine would be operational and running as promised and represented by Defendant.

8. That as a direct and proximate cause of the misrepresentations by the Defendant, Plaintiff incurred additional expense to complete the UAE order and lost profits

from allowing the Saudi Arabian order (and future order for five million rounds) to lapse, since by the time Plaintiff knew the Defendant's representations were false, said Plaintiff was unable to make other timely arrangements for a suitable substitute machine.

9.  That Plaintiff suffered damages in being unable to obtain the profit margin calculated on the UAE order based on inability to substitute another machine due to the misrepresentations of the Defendant, and therefore suffered the additional labor costs on the UAE job and was further damaged by having to discontinue pursual of the Saudi Arabian contracts, all to its damages in an amount in excess of Two Million Dollars ($5,000,000), plus costs of suit.

WHEREFORE, Plaintiff prays judgment against the Defendant, Rinky Dink Systems, d/b/a R.D. Systems n/k/a J&J Ribordy, Inc. in the amount of Five Million ($5,000,000) Dollars, for costs, and for such other relief as this Court deems proper.

JEFF MULLINS d/b/a MULLINS AMMUNITION, INC., Plaintiff

BY:  RENO & ZAHM LLP

BY: _____
ROBERT A. FREDRICKSON

RENO & ZAHM LLP
BY: ROBERT A. FREDRICKSON, #412
2902 McFarland Road
Perry Creek Plaza, Suite 400
Rockford, IL 61107
(815) 987-4050