UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JEFF MULLINS d/b/a MULLINS AMMUNITION, INC., | ) ) ) | |
| Plaintiff, | ) ) | NO. 07 C 50245 |
| vs. | ) ) | |
| RINKY DINK SYSTEMS, INC. d/b/a RD SYSTEMS, INC., n/k/a J&J RIBORDY, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

ANSWER AND AFFIRMATIVE DEFENSES OF RINKY DINK
SYSTEMS, INC. n/k/a J & J RIBORDY, INC. TO AMENDED COMPLAINT

Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J

RIBORDY, INC., by its attorneys, HOLMSTROM & KENNEDY, P.C., files its Answer

and Affirmative Defenses to the Amended Complaint filed in this cause and states as

follows:

COUNT I

1.      Plaintiff is a resident and citizen of the Town of Clintwood, County of

Dickenson, Commonwealth of Virginia and is the President and Registered Agent for

Mullins Ammunition, Inc.  Said corporation is located in the Town of Clintwood, County

of Dickenson, Commonwealth of Virginia.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 1 of the Amended Complaint.

2.    That Defendant, RINKY DINK SYSTEMS, INC. d/b/a RD SYSTEMS, INC. n/k/a J&J RIBORDY, INC. is a corporation organized under the laws of the state of Illinois, having an office and principal place of business at 14328 Commercial Parkway, South Beloit, IL 61080.

**ANSWER:**

Defendant admits the allegations of Paragraph 2 of the Amended Complaint except that Defendant denies that its office and place of business is 14328 Commercial Parkway, South Beloit, Illinois 61080.   Defendant's current registered office is 7204 Buss Road, Clinton, Wisconsin 53525.


3.    That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**ANSWER:**

Defendant admits that Plaintiff demands a sum in excess of the jurisdictional minimum required for diversity jurisdiction.


4.    That on or about February, 2002, Plaintiff appeared as a vendor at a Shot Show in Las Vegas, representing his corporation, Mullins Ammunition, Inc.   At said show, Plaintiff was approached by Defendant with an inquiry of his interest in purchasing a High Production Bullet Machine for his business.

**ANSWER:**

Defendant denies the allegations of Paragraph 4 of the Amended Complaint.

2

5.    That Defendant quoted to Plaintiff a price of Three Hundred Eleven Thousand Dollars ($311,000.00) for building a swagging (sic) and scarring machine (hereinafter referred to as "the machine") having a ten die dial which could run one hundred rounds per minute per die (1,000 rpm for 10 dies) with an overall 80-85% efficiency.  Plaintiff was informed that delivery could be expected within nine (9) months after a purchase order was signed (see Quote No. 1720B-02 attached to Defendant's Answer).

**ANSWER:**

Defendant admits that, in response to an inquiry by Plaintiff on May 13, 2002, Defendant prepared and mailed a Quote No. 1720B-02 for a swaging and scarring machine for a price of $311,000.00, which written Quote is attached hereto as Exhibit 1 and is made a part of this Answer.  Defendant denies the remaining allegations of Paragraph 5.

6.    Defendant informed Plaintiff that Defendant would not be responsible for the dies used in the machine; therefore, Plaintiff contracted with Bronson and Bratton (hereinafter referred to as "B & B") to build the dies.

**ANSWER:**

Defendant admits that it was not responsible for the dies to be used in the machine and admits that Plaintiff contracted with Bronson and Bratton to build the dies.

3

7.    That Plaintiff, Defendant and B & B met at Defendant's production plant and discussed what was necessary to complete the machine.  A first payment was made to Defendant, as agreed, and work began on the machine.

**ANSWER:**

Defendant denies the allegations of Paragraph 7 of the Amended Complaint except that Defendant admits that the down payment required under the terms of the Contract was made to Defendant by Plaintiff and work began on the machine.

8.    That as months passed, progress reports from the Defendant became few and far between.  When Plaintiff contacted Defendant to inquire as to how production was proceeding, Defendant stated that the dies sent from B & B were incorrect and would not work in the machine.  Plaintiff contacted B & B and was told that the dies sent to Defendant were within the specifications given during the initial meeting.

**ANSWER:**

Defendant denies the allegations of Paragraph 8 of the Amended Complaint except that Defendant admits that from time to time the dies sent from B & B were unsatisfactory to Defendant or to Plaintiff and that weeks would pass before Defendant received a response from Plaintiff or B & B on the tooling.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8.

9.    That Plaintiff, along with representatives of B & B, went to Plaintiff's production plant to determine how production was progressing on the machine.  At the

4

time of Plaintiff's visit, Defendant could not make the machine run without breaking down repeatedly. Plaintiff informed the representatives from B & B to make any changes to the dies that Defendant requested.

**ANSWER:**

Defendant denies the allegations of Paragraph 9 of the Amended Complaint except that Plaintiff admits that Plaintiff, representatives of B&B and representatives of Defendant had meetings during 2003 and 2004 at Defendant's plant regarding the tooling.


10.    That after more months passed and Plaintiff received a phone call from an unnamed employee of Defendant that the machine was over budget and production would be stopped unless Plaintiff called to question what was happening with the machine's production.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Amended Complaint.


11.    That Plaintiff attempted to contact Jo Ribordy, an employee of Defendant, numerous time, to discuss the machine's status. When Ribordy finally took Plaintiff's call she indicated that B & B was the cause of the problems with the production of the machine and after further discussion, Jo Ribordy blamed Plaintiff as the cause of the problems with the production of the machine.

**ANSWER:**

Defendant denies the allegations of Paragraph 11 of the Amended Complaint except that Defendant admits that it advised Plaintiff that the machine's production was delayed by Plaintiff's unresponsive behavior related to the issues with the dies produced by B & B.

12.    That Plaintiff was contacted by Gary Steves, a representative of B & B, who advised of B & B's concern regarding the cost for the dies requested by Defendant and the damage done to the dies when Defendant was attempting to run the machine. A conference call was held between Plaintiff, Defendant and B & B, after which Plaintiff assumed that all concerns had been covered and were no longer issues.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Amended Complaint.

13.    That not long after the aforesaid phone conference, Defendant sent some bullets to Plaintiff for his inspection and approval.  Plaintiff inspected said bullets and contacted Defendant with suggestions.  Many months passed before more bullets were sent for inspection.

**ANSWER:**

Defendant admits that from time to time it sent bullets to Plaintiff for his inspection and approval.  Defendant denies the remaining allegations of Paragraph 13.

14.    That early 2006, Plaintiff was informed by Jo Ribordy that the machine was ready.  Therefore, Plaintiff made a trip to Defendant's production plant for a test run of the machine.  The machine was inoperable and Plaintiff, along with staff from Mullins Ammunition, attempted to determine the cause of the malfunction with the machine.

**ANSWER:**

Defendant admits that in May and June 2006 Plaintiff visited Defendant's production plant and in further answering states that Plaintiff made a test run of the machine, produced one million bullets and that Plaintiff left with this supply of bullets from the machine but denies the remaining allegations of Paragraph 14.  Further answering, Defendant advised Plaintiff that such production run would constitute the pre-shipment demonstration at Defendant's plant and would trigger payment by Plaintiff of the contract sum of $86,000.00 and other outstanding invoices.

15.    That Plaintiff had priced and accepted a contract for a major client (UAE) one million round order based upon Defendant's assurances that the machine would be operational and running as promised and represented by Defendant.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the Amended Complaint except that Defendant denies that Defendant made any assurances beyond the terms of the written contract between the parties.

7

16.    That factoring in the breakdowns, the machine averaged 8-15 rounds per minute with three dies in the ten die dial.

**ANSWER:**

Defendant denies the allegations of Paragraph 16 of the Amended Complaint.


17.    That Plaintiff has duly performed all the terms and conditions required of Plaintiff by said agreement.

**ANSWER:**

Defendant denies the allegations of Paragraph 18 of the Amended Complaint in that Plaintiff failed to provide the necessary tooling for the machine and failed to make timely payments required by the written contract between the parties.


18.    That Defendant has breached said agreement because the machine has not been delivered within the specified time and is still not operating correctly after additional time (four years) was allowed to complete said machine.

**ANSWER:**

Defendant denies the allegations of Paragraph 18 of the Amended Complaint.


19.    That by reason of the breach of contact, Plaintiff has suffered damages as the costs spent on the dies and the machine, for the labor costs trying to de-bug the machine, the increased labor cost on the UAE contract, and the lost profit on the contracts to Saudi Arabia, all of said damages estimated at $5 million.

**ANSWER:**

Defendant denies the allegations of Paragraph 19 of the Amended Complaint.


WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that Count I of the Amended Complaint be dismissed and for such other relief as this Court shall deem just.

AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

Limitation of Liability

For its First Affirmative Defense to Count I of the Amended Complaint, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. states as follows:

1.    The written agreement between the parties relating to the machine is attached hereto as Exhibit 1 and provides as follows:

> Limitation of Liability.  RD Systems, Inc, will not be liable for any consequential damages claimed in relation to the purchase or warranty of the equipment to be delivered hereunder.  RD Systems, Inc. will not be liable for any injury to persons or property caused directly or indirectly by the use of the equipment delivered hereunder.

2.    Consequential damages have thereby been waived by Plaintiff pursuant to the terms of the Contract and cannot be sought by Plaintiff in this action.

WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that the Amended Complaint be dismissed and for such other relief as this Court shall deem just.

9

## SECOND AFFIRMATIVE DEFENSE

### Exclusion of Warranty

For its Second Affirmative Defense to Count I of the Amended Complaint, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. states as follows:

1.    The written agreement between the parties relating to the machine is attached hereto as Exhibit 1 and provides as follows:

> Warranty.    RD Systems, Inc., warrants to the original Buyer that the equipment to be delivered hereunder shall be free from defects in materials and workmanship under normal and proper usage for a period of six (6) months after shipment from our facility.    Parts requested by the Buyer, but not manufacture by RD Systems, Inc., such as cutting tools, dies and expendable tooling, are not covered by this warranty. Commercial components used as part of the equipment are warranted to the same extent as the manufacturer's warranty.    The warranty provisions contained herein are expressly in lieu of all other warranties, express or implied.    **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE MADE IN CONNECTION WITH THE EQUIPMENT TO BE DELIVERED HEREUNDER.**    Buyer's sole and exclusive remedy hereunder is limited to the repair or replacement, at the option of RD Systems, Inc., F.O.B. South Beloit, IL, of any parts that are found by RD Systems, Inc., to disclose defects.    All warranty claims must be made in writing promptly after discovery of the claimed defect within the warranty period.

2.    No warranty beyond that provided in the written agreement between the parties exists relating to the production of this machine, and no claim for breach of any warranty, express or implied, beyond the terms of this agreement can be sought by Plaintiff in this action.

WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that Count I of the Amended Complaint be dismissed and for such other relief as this Court shall deem just.

<u>COUNT II</u>

1.      That Plaintiff is a resident and citizen of the Town of Clintwood, County of Dickenson, Commonwealth of Virginia and is the President and Registered Agent for Mullins Ammunition, Inc.  Said corporation is located in the Town of Clintwood, County of Dickenson, Commonwealth of Virginia.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Amended Complaint.


2.      That Defendant, RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC. n/k/a J&J RIBORDY, INC. is a corporation organized under the laws of the state of Illinois, having an office and principal place of business at 14328 Commercial Parkway, South Beloit, IL 61080.

**ANSWER:**

Defendant admits the allegations of Paragraph 2 of the Amended Complaint except that Defendant denies that its office and place of business is 14328 Commercial Parkway, South Beloit, Illinois 61080.  Defendant's current registered office is 7204 Buss Road, Clinton, Wisconsin 53525.

11

3.    That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**ANSWER:**

Defendant admits that Plaintiff demands a sum in excess of the jurisdictional minimum required for diversity jurisdiction.

4.    That on or about February, 2002, Plaintiff appeared at a Shot Show in Las Vegas, representing his corporation, Mullins Ammunition, Inc.  Defendant was a vender (sic) at said show.  Plaintiff was approached by Defendant with an inquiry of his interest in purchasing a High Production Bullet Machine for his business.

**ANSWER:**

Defendant denies the allegations of Paragraph 4 of the Amended Complaint.

5.    That Defendant quoted to Plaintiff a price of Three Hundred Eleven Thousand Dollars ($311,000.00) for building a swagging and scarring machine (hereinafter referred to as "the machine").  Plaintiff was informed that delivery could be expected within nine (9) months after a purchase order was signed (see Quote No. 1720B-02 attached to Defendant's Answer.)

**ANSWER:**

Defendant admits that, in response to an inquiry by Plaintiff on May 13, 2002, Defendant prepared and mailed a Quote No. 1720B-02 for a swaging and scarring machine for a price of $311,000.00, which written Quote is attached hereto as Exhibit 1

and is made a part of this Answer.   Defendant denies the remaining allegations of
Paragraph 5.


6.      That early on in the production of said machine, the Defendant knew that it
had not built the machine to proper specifications and further knew from an early test
run that the machine could not and would not be able to reach the production levels
represented, and knowing said deficiencies proceeded with the following
misrepresentations:

(a)     That it was not the machine's fault that dies made by B & B were
        being damaged;

(b)     That the Plaintiff should continue to pay as agreed as the machine
        was going through production as planned;

(c)     That the remade dies from B & B were incorrectly made and did not
        meet specifications and therefore were the cause of further
        problems;

(d)     That when the machine did not operate properly that it was not
        Defendant's fault, and Defendant would be able to correct the
        deficiencies;

(e)     That the machine was over budget and thereby would be stopped
        unless Plaintiff paid more and rectified the problem allegedly
        caused by the B & B dies, and that Defendant would be able to
        provide a production machine as agreed;

(f)     That the machine in early 2006 was ready to run.

**ANSWER:**

Defendant denies the allegations of Paragraph 6 of Count II of the Amended
Complaint.

7.      That Plaintiff had priced and accepted a contract from a major client (UAE) one million round order based upon Defendant's assurances that the machine would be operational and running as promised and represented by Defendant.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of Count II of the Amended Complaint.

8.      That as a direct and proximate cause of the misrepresentations by the Defendant, Plaintiff incurred additional expense to complete the UAE order and lost profits from allowing the Saudi Arabian order (and future order for five million rounds) to lapse, since by the time Plaintiff knew the Defendant's representations were false, said Plaintiff was unable to make other timely arrangements for a suitable substitute machine.

**ANSWER:**

Defendant denies the allegations of Paragraph 8 of Count II of the Amended Complaint.

9.      That Plaintiff suffered damages in being unable to obtain the profit margin calculated on the UAE order based on inability to substitute another machine due to the misrepresentations of the Defendant, and therefore suffered the additional labor costs on the UAE job and was further damaged by having to discontinue pursual of the Saudi Arabian contracts, all to its damages in an amount in excess of Two Million Dollars ($5,000.000), plus costs of suit (sic).

14

**ANSWER:**

Defendant denies the allegations of Paragraph 9 of Count II of the Amended Complaint.


WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that Count II of the Amended Complaint be dismissed and for such other relief as this Court shall deem just.

AFFIRMATIVE DEFENSE

Exclusion of Warranty

For its Affirmative Defense to Count II of the Amended Complaint, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. states as follows:

1.    The written agreement between the parties relating to the machine is attached hereto as Exhibit 1 and provides as follows:

> Warranty.  RD Systems, Inc., warrants to the original Buyer that the equipment to be delivered hereunder shall be free from defects in materials and workmanship under normal and proper usage for a period of six (6) months after shipment from our facility.  Parts requested by the Buyer, but not manufacture by RD Systems, Inc., such as cutting tools, dies and expendable tooling, are not covered by this warranty. Commercial components used as part of the equipment are warranted to the same extent as the manufacturer's warranty.  The warranty provisions contained herein are expressly in lieu of all other warranties, express or implied.  **THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE MADE IN CONNECTION WITH THE EQUIPMENT TO BE DELIVERED HEREUNDER.**  Buyer's sole and exclusive remedy hereunder is limited to the repair or replacement, at the option of RD Systems, Inc., F.O.B. South Beloit, IL, of any parts that are found by RD Systems, Inc., to disclose defects.  All warranty claims must be made in writing promptly after discovery of the claimed defect within the warranty period.

2.    No warranty beyond that provided in the written agreement between the parties exists relating to the production of this machine, and no claim for breach of any warranty, express or implied, beyond the terms of this agreement can be sought by Plaintiff in this action.

WHEREFORE, Defendant RINKY DINK SYSTEMS, INC., d/b/a RD SYSTEMS, INC., n/k/a J & J RIBORDY, INC. requests that Count II of the Amended Complaint be dismissed and for such other relief as this Court shall deem just.

RINKY DINK SYSTEMS, INC., d/b/a RD
SYSTEMS, INC., n/k/a J & J RIBORDY, INC.

BY:    HOLMSTROM & KENNEDY, P.C.


BY:    _____
       One of its attorneys




KIM M. CASEY - #6181726
Holmstrom & Kennedy, P.C.
800 N. Church St.
P.O. Box 589
Rockford, IL 61105
(815) 962-7071

## PROOF OF SERVICE

The undersigned states that a copy of the foregoing **Answer and Affirmative Defenses of Rinky Dink Systems, Inc. to Amended Complaint** was served upon:

> Robert Fredrickson
> 2902 McFarland Rd.
> Suite 400
> Rockford, IL 61107

the parties and attorneys of record herein, via the Court's CM/ECF system by electronic transmission and by depositing said envelope, with postage fully prepaid by first class mail, in the United States Post Office mailbox in Rockford, Illinois, on this _24th_ day of _____July_____, 2008.


_____Joyce Howe_____

Subscribed and sworn to before me
this _24th_ day of _July_, 2008

"OFFICIAL SEAL"
M. VIVIAN MILLER
Notary Public, State of Illinois
My Commission Expires 12/09/11

OCT-11-2007  11:44                                                                815 624 8198    P.02/05



# SYSTEMS

**14328 Commercial Parkway    South Beloit, IL 61080**
Ω

May 13, 2002

Mr. Jeff Mullins                                Quote 1720B-02
Mullins Ammunition                              Swaging & Scarring
Rt. 2, Box 304-K
Clintwood, VA 24228
Pho: 276-926-6772
Fax: 540-926-6092

Dear Mr. Mullins:

We are pleased to quote your requirements for one bullet swaging and scarring machine. The basic swaging machine will be mechanically linked together with the only differences being in the tooling of each of the three rotary stations.

The tooling will be designed in such a manner that all adjustments are in the tools themselves, and will be labeled for a particular tool location on the turret. In this manner, when changing from one caliber to the other, the tools will be able to be placed back in and, in theory, no adjustments would need to be made since the last time the tooling was used. The tooling is is not included in the price of the machine.

Per our discussions, there will be two feeding modules. One module will be for the pistol bullets. The other module will be for the rifle bullets. The rifle puck will be higher than the pistol puck so that after they come out of the machine they can be separated and fed back into their load stations. Pucks for 5 sizes, 2 rifle and 3 pistol, are included in the price of the machine.

After the core and jacket have been placed together, and in the puck they would run to the swaging/scarring machine. There will be two infeed wheels, each set up to accept half of the production. The basic swaging machine is equipped with ten tool locations. As your production grows, the additional tools can be placed into the machine for the next level of increased production. All of the tools will be in the machine so that they can be removed without any hand tools, but if height adjustments are required, tools will be utilized.

<u>Electrical</u>
Power sources 480/220 Volts, 3 phase, 60 hertz. Transformer to furnish 120 volts for control circuits. 24 volt DC power supply to provide power for programmable controller circuits.

---

ΩRD Systems        TEL: (815) 624-7797,              FAX: (815) 624-8198
                   E-MAIL:  rd systems@easymation.com    WEB PAGE: www.easymation.com
                                    1

**EXHIBIT**

tabbies

1

UCT-11-2007  11:45                                                          815 624 8198      P.03/05

A central control system for sequence logic will be provided mounted in a NEMA 12 cabinet. A Programmable Controller will perform central control. Operator interface will be handled with a Message Center, and, or indicator lights. Any special configurations will be quoted as an option.

The electrical and electronic hardware necessary for the machine to cycle in automatic or manual mode is included in this proposal.

## Output

The system, capable of running up to 600 ppm, at the time will be limited by the feeder systems on the load modules.  The feed systems have been quoted at 300 parts per minute.  Rejects caused by machine operation will be no greater than 3%.

The actual production rate will be greater than 85% over extended periods of time.  All of the above is based on machine controllable problems such as feeding, placing, closing, etc. Problems associated with out of tolerance parts or operator delays must be excluded.

## Guarding

RD Systems will provide proper guarding as we interpret OSHA requirements to insure operator safety.

## Drawings

RD Systems will provide blue prints of assembly drawings and reproducible drawings of fast wearing/tooling parts, electrical circuit diagrams, and technical data. AutoCAD drawing format will be provided only for fast wearing/tooling parts, and electrical drawings. Machine or station layouts will be provided only in a blueprint format.

Possession of these drawings does not convey transfer of title and RD Systems does not allow use of these drawings for any purpose not directly related to the equipment supplied under this contract and insists that the customer maintain these drawings as confidential property.

## Manuals and Spare Parts List

General maintenance advice will be provided as well as copies of all vendor-supplied manuals. Because of the specialized nature of this equipment detailed maintenance procedures are typically developed during the first 6 months of operation in the user facility.  Thus RD Systems considers that detailed maintenance procedures are the responsibility of the customer to prepare in his preferred format.

A spare parts list will be available at the time of design approval. Spare parts are not included in the quoted price.

## PLC (programmable controller) documentation shall consist of standard ladder logic format. All other types of documentation (state logic, flow charts, etc.) will be billed at cost.

2

## Warranty

RD Systems warrants this equipment against defects in parts, material, and workmanship for a period of six months. This warranty is subject to RD inspection of parts to eliminate possible misuse as the cause for the failure.  RD Systems extends the manufacturer's guarantee on parts not manufactured by RD Systems. The warranty period (6 mos.) begins from date of shipment from our facility. Any defects detected between the time of shipment and final acceptance will be corrected by RD Systems. After Final Acceptance no additional warranty work will be performed prior to receipt of the final payment as stated under Payment Terms.

## Field Service

RD Systems will provide a field service engineer for on-site assistance during start-up at your facility. Travel, labor, meals, and lodging for this support will be the responsibility of the customer.

## Delivery

The above-described equipment can be shipped within 6-7 months after receipt of a purchase order and required down payment.

All shipment dates are based on a best estimate given at the time of the Quote. It is the intention of RD Systems to deliver all jobs on time. Changes in scheduling conditions present at the time of quotation may change. In the event of such changes we will present a new delivery date as soon as a discrepancy with the original delivery date occurs.

## Price

The equipment as described above will be FOB South Beloit, IL:

Basic machine not including tooling, designed for 5 sizes.
One rifle jacket and core station.
One pistol jacket and core station.
3 swaging and scarring turrets
     Price ..................................... $311,000.00

## Acceptance

This equipment will have three key project review acceptance dates.

### Design:
Upon completion of the preliminary layout drawings, the design concept will be reviewed in depth with you at our South Beloit, Illinois facility.

### Pre-Shipment Demonstration:
Prior to shipment RD Systems will demonstrate this equipment for a period of not less than 4 hours on our assembly floor in South Beloit, Illinois.

3

OCT-11-2007  11:45                      815 624 8198     P.05/05

**Final Acceptance:**

Final acceptance will occur at the customer's facility. .Final acceptance will be accomplished by either of the following occurring:

1.     Demonstration of continuous operation for a period of 8 hours.
2.     Customer begins production of product produced with equipment.

## Shipping

The above price does not include costs for applicable taxes, crating, packing, transportation, or transportation insurance that may be desired. These costs will be invoiced at the time of shipment and will be net 10 days.

## Validity

This quotation is valid for a period of 30 days. After that time RD Systems reserves the right to re-quote this system.

## Payment Terms

$10,000 Down
$75,000 Engineering Complete
$86,000 Acceptance at RD Systems
$29,000 Run-Off at Mullins

RD Systems will finance the outstanding balance for up to 24 months after shipment to Mullins from RD Systems. Payment to RD Systems will be made at 1/2 penny per bullet manufactured by Mullins on the machine.

Mullins has the option to pay off the balance at any time. The balance will be financed at the prime lending rate. Payments will be made to RD Systems monthly. RD Systems will retain ownership of the equipment until it has been paid in full.

## Delays or Cancellation

If during the design, construction, or acceptance testing of this equipment a delay is caused by customer personnel changes or lack of needed customer supplied parts, or a cancellation of the project, RD Systems reserves the right to collect all costs plus a markup of 10% at that time. The amount due will not exceed the total contract price.

If you have any questions regarding this quote, please feel free to call me.

Sincerely,


Jo Ribordy
RD Systems

Quote 1720B-02
JR/sh

4